IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 11, 2026 Session

**KATRINA ALLEN v. BLACKBAUD, INC.**

**Appeal from the Circuit Court for Madison County**
No. C-25-184          Donald H. Allen, Judge

_____

**No. W2025-01484-COA-R3-CV**
_____

Appellant appeals the trial court's dismissal of her breach of contract and breach of fiduciary duty claims. Appellee asks this Court to award frivolous appeal damages under Tennessee Code Annotated section 27-1-122. Discerning no error, we affirm the judgment of the trial court. We grant Appellee its request for frivolous appeal damages.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. MARK WARD, SR. J., joined.

Katrina Allen, Jackson, Tennessee, appellant, *pro se*.

Jeremy D. Ray, Nashville, Tennessee, for the appellee, Blackbaud, Inc.

**OPINION**

**I. Background**

Appellee Blackbaud, Inc. ("Blackbaud") is a payment platform technology provider. Appellant Katrina Allen used Blackbaud's tuition management system to process tuition payments to the University School of Jackson for the 2024-2025 and 2025-2026 school years. Ms. Allen's tuition payments were automatically withdrawn on a monthly schedule, and Ms. Allen agreed to certain terms and conditions during her use of this platform.

On November 6, 2024, Ms. Allen wrote a letter to Anthony Boor, Blackbaud's Chief

Financial Officer at the time, discussed further, *infra*, "to propose changes and redress the contract" with Blackbaud.[1]  Although unclear from the record, sometime in January 2025, Ms. Allen again contacted Blackbaud requesting some vague relief and forwarded a Durable Power of Attorney along with the vague request.[2]  A representative from Blackbaud emailed Ms. Allen seeking clarification of her requests, which she never provided.

On March 10, 2025, Ms. Allen filed a complaint for breach of contract against Mr. Boor in the General Sessions Court of Madison County, Tennessee (the "General Sessions Court").  On April 14, 2025, Blackbaud filed a motion to dismiss, noting therein that it was unclear whether Ms. Allen intended to sue Mr. Boor or Blackbaud.  On April 17, 2025, Ms. Allen filed a response to the motion, alleging the following breaches:

- Non-Compliance of written request to redress contract[.]
- Non[-]performance of Principal Interest being applied towards Principal Account.  Billing statements continue to be received requesting performance of payment using credit, debit, check, or money order[.]
- Negotiable Instrument has not been processed by the officer or returned for non[-]acceptance[.]
- The right to be heard has been violated.  Requests have been made for documents to be forwarded to Trustee for processing[.]
- Refusal to allow the Agent to fulfill duties for the Principal Account holder[.]
- Negligence of Officers of Blackbaud [] to exercise duty of care when conducting corporation [sic] business.  No due diligence was offered when Agent communicated in writing [.]
- Violation of my constitutional rights[.] No state shall deprive a person of life, liberty or property[.]

On June 9, 2025, the General Sessions Court granted the motion to dismiss.  On June 17, 2025, Ms. Allen filed a timely appeal to the Circuit Court of Madison County, Tennessee (the "trial court").

On July 11, 2025, Ms. Allen filed a document titled "Appellant's Brief," in the trial court.  She attached nine exhibits to this filing. Although Ms. Allen named "Anthony Boor CFO of Blackbaud, Inc" as the defendant in her General Sessions Court filing, this "brief" named "Blackbaud" as "Defendant/Appellee."  Therein, Ms. Allen again alleged breach of contract and added a breach of fiduciary duty claim.  In her conclusion, Ms. Allen asked the trial court "for an Order for Specific performance for [Blackbaud] to submit documents

---

[1] It appears that Ms. Allen sent multiple letters proposing these changes.  On June 6, 2025, Blackbaud formally rejected her proposal via written letter.

[2] Ms. Allen filed the November 6, 2024 letter, Blackbaud's rejection letter, and the power of attorney with the trial court.

to the Indenture Trustee." Ms. Allen also requested "actual and compensatory damage[s] in the amount of $6,510 for payments which reflects financial loss sustained due to payments made from December 4, 2024 to May 5, 2025 when fiduciary duties were not performed." Lastly, she requested "[t]he continued cost of this action in the amount of $15,365 due to the willful and reckless nature of [Blackbaud's] nonperformance of duties resulting in the dishonor of the negotiable instruments and tender."

On July 31, 2025, Ms. Allen filed a document titled "Statement of Claim." Four exhibits were attached to this document, and Blackbaud was again named as "Defendant/Appellee." The filing alleged, *inter alia*, that: (1) in February 2024, Ms. Allen and Blackbaud entered into a contractual relationship for tuition payment processing; (2) Ms. Allen "tendered payment through a valid negotiable instrument within the meaning of TN Code § 47-3-104, properly payable to [Blackbaud] as defined under § 47-3-109"; (3) Blackbaud refused to accept Ms. Allen's payment, "violating § 47-3-505 (Acceptance) and § 47-3-603(b) (refusal of tender discharges obligation)"; and (4) Ms. Allen "is entitled to enforcement of the instrument as a party entitled to enforce under § 47-3-301." Ms. Allen alleged the following claims: (1) breach of contract; (2) breach of fiduciary duty; (3) violation of the Uniform Commercial Code ("UCC") and "Tender Laws;" and (4) consumer protection violations. Ms. Allen requested a judgment in the amount of $21,875 and "[a] declaration that [her] payment was valid and enforceable." As noted in its appellate brief, Blackbaud treated "Appellant's Brief" and the "Statement of Claim," together, as Ms. Allen's complaint. We do the same.

On August 4, 2025, Blackbaud filed a motion to dismiss. Attached to this motion were: (1) the terms and conditions for Ms. Allen's use of the tuition payment platform; and (2) a letter from Blackbaud's counsel to Ms. Allen informing her of Blackbaud's intent to seek attorney's fees and costs incurred unless Ms. Allen voluntarily dismissed the suit. In the motion, Blackbaud, *inter alia*, discussed that it appeared that Ms. Allen sued Mr. Boor rather than Blackbaud, *i.e.,* the contracting entity. That same day, Ms. Allen filed a "Motion to Amend Notice of Appeal to Correct Party Name," asking the trial court to substitute Blackbaud as the named defendant. On August 12, 2025, Blackbaud filed a notice of non-opposition to Ms. Allen's request.

On August 15, 2025, the trial court heard the motion to dismiss and orally granted it. On August 20, 2025, before the trial court entered a written order on the motion, Ms. Allen filed a "Motion for Emergency Relief and to Alter or Amend Judgment." By order entered August 29, 2025, the trial court granted the motion to dismiss and awarded Blackbaud $10,000.00 in attorney's fees. The trial court also acknowledged that Blackbaud did not contest being substituted as the named defendant. On September 12, 2025, the trial court denied Ms. Allen's "Motion for Emergency Relief and to Alter or Amend Judgment."

Ms. Allen filed a timely notice of appeal.

## II. Issues

As stated in her appellate brief, Ms. Allen raises the following as issues for our review:

1. Whether the Circuit Court erred in dismissing [Ms. Allen's] complaint for failure to state a claim where the pleadings alleged a valid breach of contract.

2. Whether dismissal was improper where [Blackbaud] relied on extra-record documents including "Terms and Conditions" that were never filed with the court. While their own attachment of those terms confirms [Blackbaud's] knowledge of the interest-bearing account at issue.

3. Whether the Circuit Court abused its discretion by denying [Ms. Allen's] Rule 59.04 and 60.02 motions without a hearing.

4. Whether [Blackbaud's] conduct and coordinated delay tactics constituted prejudice and bad faith, warranting remand.

Appellee raises as an additional issue whether this Court should award it attorney's fees under Tennessee Code Annotated section 27-1-122.

## III. Standard of Review

This case was decided on the grant of Blackbaud's motion to dismiss. A Tennessee Rule of Civil Procedure 12.02 motion to dismiss is determined by an examination of the pleadings alone. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). When Blackbaud filed the motion to dismiss, it "'admit[ed] the truth of all of the relevant and material allegations contained in the complaint, but . . . assert[ed] that the allegations fail[ed] to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)). In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing *Trau-Med of Am., Inc.*, 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see also Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). On appeal, this Court reviews the trial court's legal conclusions concerning the adequacy of the complaint *de novo* with no presumption of correctness. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

Ms. Allen also raises an issue concerning her motions brought under Rules 59.04 and 60.02 of the Tennessee Rules of Civil Procedure. We review a trial court's ruling on these motions under an abuse of discretion standard. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). A trial court abuses its discretion when it "appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

## IV. Analysis

Before turning to the issues, we note that Ms. Allen is representing herself in this appeal. It is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). While "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts[,]" *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)).

### A. Motion to Dismiss

### 1. Exhibits to Motion to Dismiss

Before reviewing the substance of the trial court's grant of the motion to dismiss, we address Ms. Allen's argument that the trial court erred when it "considered material outside the pleadings." Under Tennessee Rule of Civil Procedure 12.02, if, on a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" Tenn. R. Civ. P. 12.02. Ms. Allen alleges that the trial court should not have considered the exhibits attached to the motion to dismiss, which included the terms and conditions for using Blackbaud's platform, *i.e.,* the basis of the agreement between the parties, and a letter from Blackbaud's counsel to Ms. Allen informing her of Blackbaud's intent to seek attorney's fees unless she voluntarily dismissed the claims against Blackbaud. Ms. Allen argues that Blackbaud's attachment of the foregoing to its motion to dismiss converted it into one for summary judgment, and that the trial court did not allow her to respond to same. As Blackbaud discussed in its brief, "[w]henever a claim . . . is founded upon a written instrument . . ., a copy of such instrument or the pertinent parts thereof **shall** be attached to the pleading as an exhibit[.]" Tenn. R. Civ. P. 10.03 (emphasis added). Given

that the terms and conditions formed the agreement on which Ms. Allen's complaint was based, she should have attached them to her complaint. This Court has previously held that "where documents are required to be attached to a complaint in conformity with Rule 10.03, consideration of those documents by the trial court does not convert a motion to dismiss to a motion for summary judgment." *Belton v. City of Memphis*, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *4 (Tenn. Ct. App. May 10, 2016) (citing *Samick Music Corp. v. Hoy*, No. M2008-00441-COA-R3-CV, 2008 WL 4682216, at *1 (Tenn. Ct. App. Oct. 22, 2008) ("A trial court should review only the complaint, and any exhibits attached in accordance with Tenn. R. Civ. P. 10.03, when considering a motion to dismiss, and matters outside the pleadings should not be considered."); *Marceaux v. Thompson*, 212 S.W.3d 263, 266 (Tenn. Ct. App. 2006); *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001)). Accordingly, Blackbaud's attachment of the terms and conditions to the motion to dismiss did not convert it into a motion for summary judgment. Concerning the letter from Blackbaud's counsel to Ms. Allen, we conclude that it also did not convert the motion into one for summary judgment. In the motion to dismiss, Blackbaud asked the trial court to award it attorney's fees under Tennessee Code Annotated section 20-12-119(c)(1) and/or Tennessee Rules of Civil Procedure Rule 11.03.[3] Blackbaud alleged that it sent Ms. Allen a letter informing her of its intent to seek attorney's fees as a courtesy to her and to avoid the waste of judicial and party resources. The record shows that the trial court granted the motion to dismiss on its conclusion that Ms. Allen failed to state breach of contract and breach of fiduciary duty claims. Notably, there is nothing in the trial court's order, and Ms. Allen makes no argument on appeal, to suggest that the trial court relied on the letter when it concluded that the complaint failed to state a claim as to either breach of contract or breach of fiduciary duty. Thus, we conclude that these arguments are without merit, and we proceed to review the substance of the motion to dismiss.

## 2. Grant of Motion to Dismiss

We recall that Ms. Allen's complaint alleged: (1) breach of contract; (2) breach of fiduciary duty; (3) violation of UCC and "Tender Laws;" and (4) consumer protection violations. In its order, the trial court substantively addressed only the breach of contract

---

[3] Tennessee Code Annotated section 20-12-119(c)(1) provides, in relevant part, that, where a trial court grants a motion to dismiss for failure to state a claim,

> the court shall award the party . . . against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party . . . whose claim or claims were dismissed as a result of the granted motion to dismiss.

Tenn. Code Ann. § 20-12-119(c)(1). Tennessee Rule of Civil Procedure Rule 11.03 allows a court to award sanctions in the form of attorney's fees and reasonable expenses. Tenn. R. Civ. P. 11.03.

and breach of fiduciary duty claims before dismissing the action "in its entirety and with prejudice." On appeal, Ms. Allen only addresses the breach of contract claim. We deduce that she intended to discuss the breach of fiduciary duty claim, discussed further, *infra*. To the extent Ms. Allen takes issue with the trial court's dismissal of the remaining claims, such issues are waived. *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); Tenn. R. App. P. 27(a)(4), (7).

Although quite difficult to understand and to follow, it appears that Ms. Allen's breach of contract claim is predicated on her alleged "tendered payment" via a "negotiable instrument." Specifically, in her appellate brief, Ms. Allen alleges that she "tendered lawful payment by negotiable instrument with tender instructions that requested the Chief Financial Officer to forward payment to the bank of record." As support for this allegation, Ms. Allen cites exhibits attached to the "Statement of Claim" filed in the trial court. The first exhibit is the alleged "negotiable instrument," shown below:



The next exhibit is titled "Notice of Claim to Interest," and appears to be an undated letter from Ms. Allen to Blackbaud, to-wit:

> I Allen, Katrina-N/agent here on behalf of KATRINA ALLEN/principal. I Hereby accept all Titles, All Rights, All Interest, and Guaranteed Equity owed to Principal KATRINA ALLEN. Once Blackbaud [] is removed as a Beneficiary with Account xxxx, Principal KATRINA ALLEN will assume the role of Beneficiary. I hereby instruct CFO or Trustee for Blackbaud [] to apply Principals Balance to Principals Account # xxxx each and every billing cycle for set-off. Please apply this Tender of payment to the account within 5 business days after receipt of this notice. . . .

The final exhibit Ms. Allen cites appears to be a November 12, 2024 letter from Ms. Allen to Mr. Boor. Ms. Allen titled this "Redress Letter," to-wit:

> I Allen, Katrina-N/Agent am writing to propose changes to the terms of the application with Blackbaud[]. The terms that were agreed upon was to make monthly payments of 1,085.00 (one thousand eighty five dollars) for the school year of 2024-2025. I have reviewed my contract and would like to redress it[.] The changes that I am formally proposing will be to submit the tender of payment and for the interest accrued from the Principal account xxxx to cover the balance due. As the agent [] speaking on behalf of Principal KATRINA ALLEN I am removing Blackbaud [] as Beneficiary to the interest accrued from the aforesaid principal account and placing KATRINA ALLEN as the beneficiary []. The payment terms previously agreed upon above are not beneficial for me and if changed will not hurt Blackbaud []. The benefits of the proposed changes will allow for both parties to help alleviate the current debt that the United States of America now faces. . . .

We also recall the November 6, 2024, letter from Ms. Allen to Mr. Boor, briefly mentioned *supra*, to-wit:

> The changes that I am formally proposing are for you to process the tender of payment with the interest accrued from the Principal account [xxxx]. As Power of Attorney [] for Principal KATRINA ALLEN I am removing Blackbaud [] as Beneficiary for interest received for the aforesaid principal account. The payment terms above are not beneficial to me and if changed will not hurt the company. The tuition that is owed will still have a tender of payment applied using the Interest owed to Principal KATRINA ALLEN. . . .

The power of attorney, referenced above, begins as follows:

I, KATRINA ALLEN, residing at 31⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛, hereby appoint
Katrina N. Allen of 124⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ as my attorney-in-fact
("Agent") to exercise the powers and discretions described below.

In its appellate brief, Blackbaud argues that Ms. Allen's breach of contract claim sounds in the uniformly discredited and rejected "sovereign citizen" and "redemption" theories. Our research shows that neither this Court nor the Tennessee Supreme Court have ever addressed such theories in the civil law context. Accordingly, we briefly discuss them, borrowing from federal authority and secondary sources on the issue.

"Sovereign citizens (or 'sovereigns') are a 'loosely knit network' of individuals who express—and act on—a shared anti-government sentiment." *United States v. Cook*, No. 3:18-CR-00019, 2019 WL 2721305, at *1-2 (E.D. Tenn. June 28, 2019) (citing Joshua P. Weir, *Sovereign Citizens: A Reasoned Response to the Madness*, 19 LEWIS & CLARK L. REV. 830, 834 (2015)). Although each sovereign citizen's philosophies and conspiracy theories can vary, their core belief is that "they do not recognize federal, state, or local laws, policies, or regulations." U.S. Dep't of Justice, F.B.I., Counterterrorism Analysis Section, *Sovereign Citizens: A Growing Domestic Threat to Law Enforcement*, (Sept. 2011), https://perma.cc/9GPY-28A3 (last visited July 2, 2026). Rather, they follow their own set of laws. *Id.* One commonly held belief of these individuals is that "their status as sovereign citizens differs from the status of the fictional individuals identified by their birth certificates or their social security numbers." *Wood v. United States*, 161 Fed. Cl. 30, 34 (Fed. Cl. 2022). This belief forms the foundation of a common debt avoidance scheme used by sovereign citizens called the redemptionist theory:

> The redemptionist or strawman theory is the basis for the sovereign citizen's use of all capital spellings, as well as references to powers of attorney. Under the redemptionist theory, a person is split into two: a real person and a fictional person, called the "strawman."

> > The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman . . . .

> Adherents to the redemptionist theory further claim that the government

created strawmen through birth certificates.

> A person's name spelled in "English," that is with initial capital letters and small letters, represents the "real person," that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the "strawman" is referenced, and the flesh and blood person is not involved.

Carrying this a step further, adherents believe that:

> [W]hen the United States Government "pledged the strawman of its citizens as collateral for the country's national debt," it created an "exemption account" for each citizen, identified by each person's Social Security number. When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts. Moreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory-- and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as ""redemption,"—never have to actually pay for anything.

Caren D. Enloe, *Sovereign Citizens and the Raging War of Paper Terrorism*, 78 CONSUMER FIN. L.Q. REP. 250, 255-56 (2025) (internal citations omitted). Although sovereign citizens often do not recognize federal, state, or local laws, they frequently use the court system when attempting to enforce their own version of the law. "Sovereign citizen pleadings are 'dense, complex, and virtually unreadable,' and a branch of sovereign citizen case law has grown to address the voluminous and often frivolous workload." *Cook*, 2019 WL 2721305, at \*2 (quoting Francis X. Sullivan, *The "Usurping Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 1999 WIS. L. REV. 785, 796 (1999) ("Faced with mountains of paperwork, courts must choose between spending hours deciphering Sovereign Citizen arguments or dismissing them out of hand")) (other citations omitted).

In her reply brief, Ms. Allen does not deny that her breach of contract claim is grounded in these theories. Rather, she states that "[s]uch labels do not resolve the legal question presented." We disagree. Although Ms. Allen does not explicitly employ the label of "sovereign citizen," her claim appears to be based on this ideology, specifically the redemption theory that is prevalent among sovereign citizens. First, the durable power of attorney appears to have been executed by the strawman, "KATRINA ALLEN," who appointed the real "Katrina N. Allen," to act as the strawman's "attorney in fact." It then

seems that Ms. Allen relied on the durable power of attorney to separate the real "Katrina Allen" from the strawman "KATRINA ALLEN" to avoid the financial obligation she owed to the University School of Jackson. Throughout the case, Ms. Allen has alleged that she "lawfully" used a "negotiable instrument" and "tendered payments," terms found throughout the UCC. Furthermore, stamped onto the tuition invoice, as shown above, is the following:

> For presentation to the United States Treasury Fiscal Agent of the United States, for redemption or in exchange for securities of a new issue, in accordance with written instructions submitted by _____

As best as this Court can deduce, it appears that Ms. Allen believed that the foregoing should have satisfied the tuition payments. Ms. Allen argues that Blackbaud breached their contract by failing to honor such "payments." In making these "arguments," Ms. Allen attempted to create her own law and asked the trial court to enforce it against Blackbaud with a resulting judgment in her favor of $21,875.00. The trial court did not err in refusing to do so.

It is well-settled that a plaintiff must prove three elements in a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) a deficiency in the performance amounting to a breach; and (3) damages caused by the breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Ms. Allen's complaint fails to contain any set of facts which, if true, show that Blackbaud breached their agreement. *Crews*, 78 S.W.3d at 857; *see also Lanier*, 229 S.W.3d at 660. Indeed, Ms. Allen fails to cite *any* provision within the terms and conditions to show that Blackbaud was required to accept her altered version of the tuition invoice as payments to be processed. On our review of the terms and conditions, such provision does not exist. Accordingly, Ms. Allen's complaint failed to state a breach of contract claim.

Although Ms. Allen alleged breach of *fiduciary duty* in her complaint, her arguments on appeal are that Blackbaud violated an implied covenant of *good faith*. As to the former issue, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010); *see also* Tenn. R. App. P. 27(a)(4), (7). Because Ms. Allen's appellate brief provides no substantive argument concerning fiduciary duty, this issue is waived. Concerning her good faith argument, it does not appear that she made this argument to the trial court. Indeed, the trial court's order concerns her breach of fiduciary duty claim. It is well-settled in Tennessee that "issues not raised in the trial court cannot be raised for the first time on appeal." *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 898 (Tenn. 2016) (quoting *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)). Because Ms. Allen did not raise her good faith argument in the trial court, it is waived. Waivers aside, these

arguments are predicated on her breach of contract claim. Specifically, Ms. Allen alleges that Blackbaud breached an alleged fiduciary duty/acted in bad faith when it did not "process" her alleged "payments" in the manner she demanded. Given that Ms. Allen's breach of contract claim fails, her fiduciary duty/good faith arguments/claims also fail. For the foregoing reasons, we conclude that the trial court did not err when it dismissed Ms. Allen's complaint.

### B. Denial of Ms. Allen's Motion to Alter or Amend

Ms. Allen's next issue concerns the trial court's denial of her motion brought under Rules 59.04 and 60.02 of the Tennessee Rules of Civil Procedure. We note that the motion at issue was filed as one pleading but designated as being brought "[p]ursuant to Tenn. R. Civ. P. 59.04 and 60.02." Tennessee Rule of Civil Procedure Rule 59.04 allows a party to file a motion to alter or amend a judgment within thirty (30) days after the entry of the judgment. Tenn. R. Civ. P. 59.04. The purpose of Rule 59 motions "'is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors *before a judgment becomes final*.'" *Discover Bank*, 363 S.W.3d at 489 (citing *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) *overruled on other grounds by Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000)) (emphasis in original). Tennessee Rule of Civil Procedure Rule 60.02 allows a court to relieve a party *from a final judgment* due to: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud, misrepresentation, or other misconduct of an adverse party; (3) the judgment being void; (4) the judgment being satisfied, released or discharged, or a prior judgment upon which it is based being reversed or otherwise vacated, or it being no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. Tenn. R. Civ. P. 60.02; *see also Discover Bank*, 363 S.W.3d at 489. Rule 60.02 motions, "shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02. As discussed above, we review the trial court's ruling on these motions under an abuse of discretion standard. *Id.* at 487.

It is well-settled that courts are required "to consider the substance of a post-trial motion, rather than its form[.]" *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998) (citing Tennessee Rule of Civil Procedure 8.05(1) ("[n]o technical forms of pleading or motions are required")). Turning to the record, the motion at issue was filed on August 20, 2025, before the trial court entered a written order on the motion to dismiss. Accordingly, the judgment was not yet final when the motion was filed. As such, it could not be brought under Rule 60.02. Thus, we review the motion under Rule 59.04.

This Court has explained that

[a] motion to alter or amend filed under Tenn. R. Civ. P. 59.04 "can provide

- 12 -

relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect." *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009). The trial court may grant such a motion (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, in unique circumstances, the judgment should be amended to correct a clear error of law or to prevent injustice. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001). A motion to alter or amend should not, however, be granted if it simply seeks to relitigate matters that have already been adjudicated. *Id.* Moreover, a motion to alter or amend should not be used to raise or present new, previously untried, or unasserted theories or legal arguments. *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).

*Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *6 (Tenn. Ct. App. Feb. 10, 2016). Turning to the motion, Ms. Allen alleged the following as "legal bas[e]s" for the motion: (1) T.C.A. § 47-3-603 ("[t]ender of payment discharges obligation"); (2) breach of contract; (3) Tennessee Consumer Protection Act; and (4) "Federal protections including Truth in Lending Act (15 U.S.C. § 1601 et seq.)." On our review, Ms. Allen alleged the first three bases in the complaint. It does not appear that Ms. Allen ever argued the fourth basis to the trial court. Thus, the motion seeks both to relitigate matters and to raise a new, previously untried issue. Notably, the motion does not suggest that Ms. Allen was entitled to relief due to mistake, inadvertence, surprise, or excusable neglect. *Goetz*, 2016 WL 537818, at *6 (quoting *Pryor*, 338 S.W.3d at 885). We conclude that the trial court did not abuse its discretion when it denied Ms. Allen's post-trial motion.

Ms. Allen also takes issue with the fact that the trial court did not hold a hearing on her motion to alter or amend. Turning to the motion, it concluded by stating the following:

WHEREFORE, Due to the urgent nature of this matter, [Ms. Allen] respectfully requests that this Motion to alter or amend its judgment, or in the alternative, grant relief under Rule 60.02[] be set for immediate hearing or otherwise considered by the [c]ourt on an expedited basis.

On September 10, 2025, Ms. Allen filed a "motion for ruling on pending motion," asking the trial court to enter a ruling on her motion to alter or amend. This motion concluded by stating:

WHEREFORE, [Ms. Allen] respectfully requests that the [c]ourt issue a ruling on the pending [motion to alter or amend], and for such other and further relief as the [c]ourt deems just and proper.

Rule 19.01 of the Rules of the Circuit Court of Madison County places the "burden to make

- 13 -

application for a hearing at the next available motion day or as soon thereafter as practicable" on the attorney or litigant who files the motion. Furthermore, the rule provides that "[f]ailure to comply with [the rule] shall be construed by the [c]ourt as abandonment of the motion." On our review of the record, it does not appear, and Ms. Allen does not allege, that she ever sought a hearing date from the trial court. In the motion to alter or amend, she broadly asked for an "immediate hearing," *or* that the trial court "otherwise consider[]" the motion "on an expedited basis." In the motion for a ruling, she did not request a hearing. Thus, we conclude that the motion was not heard because Ms. Allen failed to set it for hearing.

## C. Blackbaud's Counsel's Conduct

Briefly, we discuss a separate case to better understand Ms. Allen's next issue. Around the same time that Ms. Allen initiated these proceedings against Blackbaud, she filed a similar lawsuit against Jackson Energy Authority ("JEA"), alleging breach of contract. The trial court in that case dismissed the action, and Ms. Allen appealed to this Court.[4]

Ms. Allen's fourth issue first concerns Blackbaud's counsel's communications with JEA's counsel regarding the similar lawsuits that Ms. Allen filed against their clients. Ms. Allen alleges that the opposing counsels communicated with each other "without [her] knowledge or consent," and that she "did not authorize or participate in any such communication." In this portion of her brief, Ms. Allen also argues that Blackbaud "failed to include the South Carolina based corporate defendant in the trial proceeding." Ms. Allen alleges that "[t]his procedural tactic had the effect of prolonging the litigation unnecessarily." Ms. Allen alleges that the foregoing were "coordinated and delaying tactics . . . intended not to resolve the merits, but to obstruct and postpone adjudication through procedural maneuvering." The only "support" Ms. Allen provides for these "arguments" are broad citations to Rules 3.2, 3.3, 4.4, and 8.4 of the Tennessee Rules of Professional Conduct. Tenn. Sup. Ct. R. 8, RPC 3.2, 3.3, 4.4, and 8.4.

Concerning Ms. Allen's first argument, there is neither a rule nor a law that the opposing counsels were prohibited from speaking to each other without her presence or consent. As to her second argument, we deduce that Ms. Allen alleges that Blackbaud deliberately did not include itself in the trial court proceeding. As discussed above, Ms. Allen initially named Blackbaud's CFO as the defendant, Blackbaud brought this to Ms. Allen's and the trial court's attention, and, thereafter, did not oppose Ms. Allen's request that it be substituted as the defendant in the underlying action. Furthermore, as plaintiff in the underlying proceedings, it was Ms. Allen's burden to name the proper party; it was not Blackbaud's burden to include itself in the below proceedings. Given the foregoing, we

---

[4] As of the date of the filing of this opinion, that case is currently pending. *See Katrina Allen v. Jackson Energy Authority, et al.*, W2025-01029-COA-R3-CV.

conclude that Ms. Allen's fourth issue is without merit.

## D. Blackbaud's Attorney's Fees

Blackbaud asserts that Ms. Allen's appeal is frivolous and asks this Court to award it frivolous appeal damages under Tennessee Code Annotated section 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "An appeal is frivolous when it has 'no reasonable chance of success,' *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (quoting *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978)). Whether an award of frivolous appeal damages is warranted rests solely in this Court's discretion, *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009), and we exercise that discretion "sparingly so as not to discourage legitimate appeals." *Whalum*, 224 S.W.3d at 181. As discussed at length above, Ms. Allen's claims are utterly devoid of merit and seek to enforce laws that *she* has created. Her other appellate arguments are equally lacking in merit. We emphasize that Ms. Allen's "claims" are not founded in Tennessee law and are a waste of judicial and party resources. As such, we conclude that Blackbaud is entitled to its reasonable appellate attorney's fees and costs based on frivolous appeal, and we grant its request for same.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We also grant Blackbaud's motion for frivolous appeal damages. The case is remanded for such further proceedings as are necessary and consistent with this opinion, including determination of Blackbaud's reasonable attorney's fees and expenses incurred in defending this appeal and for entry of judgment on same. Costs of the appeal are assessed to the Appellant, Katrina Allen. Execution for costs may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE